IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GREET NORTHERN INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>EL LEGADO PROPERTY MANAGEMENT COMPANY, INC., et al.<br><br>　　　　Defendants. | CIVIL NO.: 3:11-cv-01303 (DRD) |

GREAT NORTHERN INSURANCE COMPANY,

　　　　Plaintiff,

　　　　v.

EL LEGADO PROPERTY MANAGEMENT COMPANY, INC., et al.

　　　　Defendants.

CIVIL NO.: 3:11-cv-01303 (DRD)

**PLAINTIFF'S INITIAL SCHEDULING CONFERENCE MEMORANDUM**

TO THE HONORABLE COURT:

　　Now comes Plaintiff, Great Northern Insurance Company ("Great Northern"), through its undersigned counsel, and respectfully states and prays:

**1.　　Preliminary Statement**

　　Plaintiff has attempted to confer with counsel for the Defendants El Legado Homeowner's Association/Condo Regime I ("HOA") and Real Legacy Assurance Company, Inc. ("Real Legacy") to hold a Rule 26(f) Conference in order to discuss discovery matters and a joint memorandum.  However, Plaintiff has not received any response to its requests for a conference call and has been advised by Defendant Real Legacy that it will not participate in any discovery matters until its Motion to Dismiss is decided.  Therefore, Plaintiff has submitted this memorandum on its behalf only.

　　By way of background, on January 20, 2012, Plaintiff circulated a proposed discovery plan and requested conference call to have a Rule 26(f) conference and planning meeting with

counsel for Real Legacy and the HOA.  Plaintiff did not receive any proposed dates or times in response to its request.  On March 12, 2012, Plaintiff again wrote to Defendants Real Legacy and the HOA to propose a conference call to have a Rule 26(f) planning meeting.  In this latter correspondence, Plaintiff advised that it believed that parties were required to comply with the Court's initial scheduling order and to therefore confer to discuss a proposed discovery plan and other matters.  However, to date, plaintiff has not received any response to its requests to set up a conference call for a Rule 26(f) planning meeting.

Furthermore, on February 1, 2012, Defendant Real Legacy advised Plaintiff that even though the First Amended Complaint had been filed, Real Legacy was not a defendant in the case, Real Legacy had not agreed to start any discovery, and that Real Legacy was awaiting a ruling on its Motion to Dismiss before engaging in any discovery.  Attached is the email that was received from Real legacy on February 1, 2012.  As a result, Plaintiff has been unable to discuss discovery matters with the defendants.

Despite good faith attempts to coordinate a conference call among counsel for a Rule 26(f) planning meeting, Plaintiff has been unable to confer with Real Legacy and the HOA.  The remaining defendants, two of which are apparently insured by Real Legacy, are also in default and Real Legacy has asked the Court to stay the default proceedings pending the outcome of its Motion to Dismiss.  Therefore, although Plaintiff has made good faith efforts to comply with the Court's Initial Conference Order, Plaintiff has been unable to discuss a proposed discovery plan or a joint initial conference memorandum with the Defendants.

**2.      Background of Contentions**

Plaintiff, Great Northern, as subrogee of Juan A. (Chi Chi) Rodriguez Vila and Iwalani Rodriguez ("insureds"), has brought this subrogation action against Defendants, El Legado Property Management Co., Inc., El Legado De Chi Chi Rodriguez Golf Resort, Inc., El Legado De Chi Chi Rodriguez Golf Resort, SE, El Legado Homeowner's Association, Inc., a/k/a El Legado Condominium Regime I ("HOA"), and Real Legacy Assurance Company, Inc. ("Real legacy"), as insurer for the El Legado Resort Entities.[1]  This subrogation action arises out of a robbery of jewelry and valuables from Plaintiff's insured on May 19, 2010 at their residence at the El Legado Complex in Guayama, Puerto Rico by 5 to 7 armed and masked individuals ("the robbery").[2]

Plaintiff's claims stem from inadequate and improper security at the El Legado Complex, which allowed the robbery to occur, thereby requiring plaintiff to pay its insured damages in the amount of $404,000 for thefts of jewelry and other valuables.  The improper security measures arise from the fact that a single security guard working for the El Legado Resort and/or the HOA, Jose Garcia Gomez, was responsible for performing perimeter security throughout the complex and the two entrances to the complex.  During the robbery, Gomez was tied up and guarded by one of the robbers for a period of time, which allowed them to gain access to the El Legado Complex.  The removal of the security guard went unnoticed by the remainder of the staff at the El Legado Complex because there was an inadequate security plan in place, including the lack of

---

[1] For brevity, "El Legado Resort" will be used to refer to Defendants El Legado De Chi Chi Rodriguez Golf Resort, Inc. and El Legado De Chi Chi Rodriguez Golf Resort, which are the entities that held the ownership interest in the resort and golf operations.  Plaintiff believes that these are the entities which Defendant Real Legacy insures under its commercial general liability coverage.

[2] For brevity, the "El Legado Complex" will refer to the combined operations of the resort, golf course and residences.

any third party monitoring or check-in requirements with other employees of the Complex that would have alerted others. Gomez was apparently not required to check in with any other supervisors or outside monitoring companies, which would have alerted others to the robbery. Essentially, if one provides security measures, there is recognition of the need for security and therefore it should be provided in safe and proper manner.

Plaintiff concedes that there is a dispute by the Defendants as to whether the golf course, resort, or residences at the complex were responsible for providing perimeter security and other security measures for the residences. For this reason, Plaintiff asserts that discovery is necessary in order to determine which party from the El Legado Complex was responsible for providing security and who specifically employed and instructed the guard, Gomez. Based on Plaintiff's investigation thus far, it appears that Gomez was directly employed by one of the El Legado entities and not a separate security firm.

After filing its Complaint, Plaintiff continued to investigate this matter and learned that Real Legacy provided insurance coverage to the entities who owned the golf course and resort portion of the Complex, which were apparently the employers of the security guard, Gomez, at the time of this incident. Plaintiff thereafter placed Real Legacy on notice of its claim with a letter and sent it a copy of the Complaint. Plaintiff also requested a copy of the declarations page and insurance policy for these insureds so that it could evaluate the general liability coverage available to cover its subrogation claim.

Despite Plaintiff's notice and requests, Real Legacy did not provide any documentation regarding coverage until it elected to file a Motion to Dismiss. Consequently, Plaintiff has only been provided with the selected documents that Real Legacy has chosen to include in its motion

4

papers with the court and, therefore, as noted in plaintiff's reply to Real Legacy's Motion to Dismiss, Plaintiff should be afforded time to conduct discovery concerning the insurance coverage issue. Specifically, Plaintiff believes that a review of the insurance application and complete underwriting file would be the most efficient way to establish which entities and operations are insured by Real Legacy's policy.

In regard to the insurance coverage issue, it should also be noted that the El Legado Golf Resort, which is sometimes used as the common name for the Complex, filed for bankruptcy in December 2008 and was proceeding through the reorganization and a discharge plan under the bankruptcy at the time of this incident. Plaintiff, therefore, believes that its claim is not covered by the bankruptcy action and that it may proceed against any insurance proceeds available to any of the defendants.

At this time, the HOA does not appear to have insurance coverage or sufficient assets available to satisfy Plaintiff's claim and Defendant El Legado Property Management Company, Inc. and Defendants El Legado Resort, which are believed to be insured through Real Legacy, have not submitted an Answer or otherwise appeared in this action. However, Real Legacy, as an insurer for the El Legado Resort entities, has voluntarily appeared and submitted to this Court's jurisdiction by filing an Entry of Appearance and numerous filings with this Court, including Motions for Relief and the Motion to Dismiss.

**3.     List of Proposed Fact Witnesses and Expert Witnesses**

Plaintiff submits the following list of potential fact witnesses who may be relied upon to support plaintiff's action:

| | |
|---|---|
| Aurora Aragon-Bruchezzi, Esq. Recovery Representative for Plaintiff | Information concerning damages and investigation of loss |
| Roxanne Barlingri JA Barlingri Company, Independent Insurance Adjustor | Information regarding loss, adjustment of loss and damages |
| Juan Antonio Rodriguez (Chi-Chi) Iwalani Rodriguez (insureds) | Information concerning the robbery, loss, damages and investigation |
| Maria Morales, Assistant to Mr. Rodriguez | Information regarding loss, damages and investigation |
| Wanda Reyes, Administrator of El Legado Golf Resort | Information regarding security guard, loss, investigation and insurance available to the resort |
| Agent Juan Bautista, CIC Headquarters | Information concerning robbery, investigation and criminal prosecution |
| Agent Glidden Arooyo Perez and Lieutenant Wilfredo Florez Melendez, Guayama State Police Headquarters | Information concerning robbery, investigation and criminal prosecution. |

Alleged Robbers:

Ray Francisco Rivera Moreno,                Information concerning theft of plaintiff's

| | |
|---|---|
| Joshua Rivera Arooyo, | insureds |
| Victor Rivera Hernandez, | |
| Oscar Rivera Cruz, | |
| Jean Carlos Sanchez Velez, | |
| Jose Garcia Gomez, Security Guard at time of robbery | Information concerning the robbery, security services provided at the resort, and perimeter security |

Plaintiff has also identified additional individuals with information and who plaintiff may rely upon as fact witnesses in its Initial Disclosures that were served on the Defendants on January 20, 2012.

Plaintiff has also retained the services of an expert security consultant, J. Patrick Murphy of LPT Security Consulting. Plaintiff will be relying upon Mr. Murphy as its designated expert concerning the security measures at the complex at the time of the incident. Plaintiff is not yet in a position to prepare an expert report, as the information concerning the security measures, employment of Gomez, and overall security at the Complex is in the possession, custody and control of Defendants. Plaintiff will need to conduct discovery of these matters before it will be in a position to produce its Federal Rule of Civil Procedure 26 expert disclosures.

**4.    Documentary Evidence**

Plaintiff has provided its Initial Disclosures pursuant to Federal Rule of Civil Procedure 26 to the defendants on January 20, 2012. Plaintiff has also produced its initial document

production bates number P001 to P338 to the defendants, including mailing these documents to Real Legacy prior to its Entry of Appearance in this action.

Plaintiff's initial document production will be relied upon as this case proceeds and includes the insurance adjustment documentation concerning the adjustment process, damages, and the investigation of the loss. Plaintiff's initial document production also includes news articles and the police reports that were obtained by the adjuster in connection with the robbery.

To date, Plaintiff has not received any documents from Defendants HOA or Real Legacy. The other defaulted defendants have also not sent Plaintiff any documentation.

**5.     Necessary Discovery**

On January 20, 2012, in addition to serving its Initial Disclosures, Plaintiff also served Interrogatories and Request for Production of Documents Addressed to the Defendants HOA and Real Legacy. To date, these discovery requests have not been answered and only recently did Defendant HOA file a Motion objecting to Plaintiff's Interrogatories. Plaintiff believes that this latter motion is improper under the rules and never received a request from counsel to clarify the interrogatories or work out the objections before the Motion was filed.

In addition, as noted above and in the attached February 2, 2012 email from Defendant Real Legacy, Defendant Real Legacy has advised that it will not engage in any discovery matters until the Motion to Dismiss has been decided.

Plaintiff will require answers to its Interrogatories and Request for Production of Documents and depositions of representatives of the Defendants concerning the issues of insurance coverage and liability. In regard to insurance coverage, Plaintiff will require the

complete underwriting file and insurance application from Defendant Real legacy.  In regard to liability, Plaintiff will also need to explore the responsibility for security at the Complex and the employment of Gomes, including directions and training.

Plaintiff proposes that discovery be conducted in three phases:  (1) insurance coverage available to the entities through Real Legacy, (2) fact discovery regarding security measures, and (3) expert discovery.  In regard to phase 1 discovery, Plaintiff proposes that preliminary discovery be afforded to investigate coverage through Real Legacy through the exchange of Interrogatories and Request for Production of Documents directed to coverage, including the underwriting file and insurance application and a deposition of an authorized representative of Real Legacy concerning coverage issues.  If there is coverage based on phase 1 discovery, Plaintiff would propose that the case then move to phase 2 and thereafter phase 3.

**6.     Service of Process Issues**

In its most recent filing with the Court on March 24, 2012, in opposition to Plaintiff's Motion for Relief under 56(d), Defendant Real Legacy asserts that Plaintiff has not served Real Legacy with the First Amended Complaint.  Such a position not only ignores that the Defendant has waived any challenge to service by its Entry of Appearance and numerous filings with the Court but also fails to recognize that Defendant's Motion to Dismiss does not mention service of process.  Despite stating that it is not submitting to this Court's jurisdiction in its filings with this Court, Defendant Real legacy has waived any challenges to service of the First Amended Complaint.

Specifically, on January 11, 2012, Ernesto R. Irizarry, Esq., filed a Notice of Appearance on behalf of Real Legacy Assurance Company in this action (Docket Number 32), and thereafter

Defendant Real Legacy filed numerous motions and requests for relief from this Court, including the pending Motion to Dismiss, all with the qualifications that it was not submitting to the jurisdiction of this Court. Indeed, if the Court were to accept Defendant Real Legacy's assertion that it was not submitting to the jurisdiction of this Court, Defendant Real Legacy had no basis to follow a Motion to Dismiss with this Court. Thus, the filing of the Motion to Dismiss is a waiver of any challenge to service and a concession that Real Legacy was served with the First Amended Complaint through the Court's electronic case filing system on January 19, 2012 when it was received by its counsel (Docket No. 42).[3]

### 7. Insurance Issues and Pending Motion to Dismiss

Although Defendant Real Legacy represents that it has provided the parties with all of the information necessary to make an assessment of coverage, Plaintiff has only been provided with selected documents related to insurance coverage and has not had access to the complete underwriting file or insurance application materials that would clarify coverage. Plaintiff should be afforded a fair opportunity to conduct discovery concerning insurance coverage if it is Defendant's intention to rely on a lack of coverage to dismiss Plaintiff's direct claim against Real Legacy.

The spirit of the federal rules require a free exchange of non-privileged information through recognized discovery mechanisms, and Plaintiff should be afforded the benefits of the rules and allowed to conduct discovery of Defendant Real Legacy without simply accepting their word that there is no coverage. Indeed, at no point has Real Legacy actually identified which

---

[3] On January 31, 2012, Defendant Real Legacy filed its Motion to Dismiss the First Amended Complaint (Docket No. 49). By doing so, Defendant's actions implied that service was effected and therefore caused the parties and the Court to proceed to believe that the First Amended Complaint had been served.

legal entity, company, incorporated business, or organized partnership that it actually insured other than referring to the common name of the overall Complex.  Rather, Real Legacy has simply stated that it did not insure the specific legal entities that Plaintiff sued even though Plaintiff explained in its First Amended Complaint that these entities make up the Complex.  One has to presume that Real Legacy provided some company with commercial general liability coverage in connection with the Complex and therefore it begs the question who was insured if not the entities that owned the Complex?

Furthermore, to the extent that Defendant Real Legacy attempts to argue that it did not cover security services at the Complex, it did provide commercial general liability coverage to the resort entities based on its declaration pages that have been submitted as exhibits to its Motion to Dismiss.  While Defendant has tried to qualify that coverage by stating that a coding manual for the declaration pages, which is not part of the policy, shows that it only covered selected operations of the golf resort, Defendant has cited no exclusion that would provide a basis for avoiding paying any liability claims asserted against its insured for improper security as part of the overall services of a golf course, resort or the complex.  This is precisely why Plaintiff needs discovery of these issues, as the underwriting file surely contains an appraisal of the services and the Complex that may contain key information we have not been provided with thus far.

### 8.    Proposed Uncontested Facts

Because some defendants are in default and the others have hampered Plaintiff's ability to perform discovery, Plaintiff has been unable to propose a list of uncontested facts.  In the alternative, Plaintiff proposes those facts mentioned above.

RESPECTFULLY SUBMITTED.

The undersigned attorney hereby certifies that counsel of record was notified via the Court's ECF System which will electronically email this motion to them.

In San Juan, this 9TH day of April, 2012.

          CORREA-ACEVEDO LAW OFFICES, P.S.C.
          ATTORNEYS FOR
          GREAT NORTHERN INSURANCE COMPANY
          Centro Internacional de Mercadeo II
          Guaynabo, Puerto Rico 00968
          Tel. (787) 273-8300
          Fax. (787) 273-8371
          email: ra@correaacevedo.com

          s/Roberto Abesada-Agüet
          USDC-PR No. 216706

CO-COUNSEL:
Joseph F. Rich, Esquire
James P. Cullen, Jr., Esquire
COZEN O'CONNOR
1900 Market Street
The Atrium - Third Floor
Philadelphia, PA  19103
(215) 665-7185